UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JULIUS GREER,

                    Petitioner,

   -against-                                              9:15-cv-0579 (LEK)

WARDEN, FCI RAY BROOK,

                      Respondent.

**DECISION and ORDER**

**I.    INTRODUCTION**

Petitioner Julius Greer ("Petitioner") filed a *pro se* Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, along with various documents, alleging that the Federal Bureau of Prisons ("BOP") denied him due process by reducing the good conduct time ("GCT") he is eligible to receive. Dkt. Nos. 1 ("Petition"); 1-1 ("Greer Affidavit"); 1-2 ("Exhibits"). Respondent opposes the Petition, arguing that Petitioner does not have a liberty interest in the opportunity to earn good time credits. Dkt. Nos. 5 ("Response"); 5-1 ("Declaration of Rebecca Erickson"); 5-2 to -7 ("Respondent's Exhibits"). For the reasons that follow, the Petition is denied.

**II.    BACKGROUND**

Petitioner is currently serving a 180-month term of imprisonment with a 5-year term of post-release supervision for Conspiracy to Commit Robbery which Interfered with Commerce, Aiding and Abetting Robbery which Interfered with Commerce, Felon Possession of a Firearm, and Aiding and Abetting Use of a Firearm in a Crime of Violence, in violation of 18 U.S.C. §§ 1951(a), 922(g)(1), and 924(c)(1)-(2). See Resp. Ex. A, Inmate Data Sheet. Petitioner currently has a projected release date of December 18, 2022. See Resp. Ex. F, Good Time Data Sheet.

As a BOP inmate at Ray Brook Federal Correctional Institution in New York, Petitioner was eligible to enroll in a GED program offered at the institution. Specifically, pursuant to 18 U.S.C. § 3624(b)(1), Congress directed the BOP to establish GED programs for inmates as well as an incentive program to encourage prisoners to obtain a GED in exchange for earning up to fifty-four days of GCT. 18 U.S.C. § 3624(b)(1) (stating that a prisoner serving "a term of imprisonment of more than 1 year" is eligible to earn credit "of up to 54 days at the end of each year"). This program, as regulated by the BOP, authorizes as follows:

> (c) For inmates serving a sentence for an offense committed on or after April 26, 1996, the Bureau will award
>
> (1) 54 days credit for each year served (prorated when the time served by the inmate for the sentence during the year is less than a full year) if the inmate has earned or is making satisfactory progress toward earning a GED credential or high school diploma; or
>
> (2) 42 days credit for each year served (prorated when the time served by the inmate for the sentence during the year is less than a full year) if the inmate has not earned or is not making satisfactory progress toward earning a GED credential or high school diploma.

28 C.F.R. § 523.20; see also Martinez v. Huffard, No. 13-CV-1854, 2014 WL 8663306, at *3-4 (S.D.N.Y. Feb. 5, 2014), adopted, 2015 WL 1821642 (S.D.N.Y. Apr. 21, 2015). A prisoner is considered to be "making satisfactory progress toward earning a GED" unless (1) the prisoner refuses to enroll in the literacy program; (2) he commits a prohibited act in the literacy program during the last 240 hours of instruction; or (3) the prisoner has withdrawn from the program. See 28 C.F.R. § 544.73(b). Although a prisoner cannot be disciplined for refusing to participate in the GED program (as compared to the mandatory literacy program established under 18 U.S.C. § 3624(f)), the regulations allow the BOP to withhold GCT if a prisoner refuses to participate in the program once he has entered it. See 28 C.F.R. §§ 523.20, 544.73; Martinez, 2014 WL 8663306, at

2

*4.

Petitioner was enrolled in a GED program at Ray Brook under this incentive program, and was therefore eligible to earn fifty-four days of GCT so long as he was making satisfactory progress toward earning a GED or high school diploma. Pet. Aff. at 1-2. In 2014, the GED class was taught by Rebecca Erickson. According to her Declaration, Petitioner became "verbally abusive" towards her during a May 2014 class and was spending the majority of his time in class on legal work. Erickson Decl. at 2. Later, when Ms. Erickson directed Petitioner to stop his legal work, he "demanded a drop sheet to discontinue classes." Id. Petitioner acknowledged he would lose twelve days of GCT per year if he withdrew from the GED program. Id. Petitioner admits he signed the drop sheet on May 23, 2014, however, according to Ms. Erickson, he refused to get his Unit Team's signature, telling her "That's your problem, I signed the sheet." Pet. at 1; Pet. Ex. 2 ("GED Withdrawal Form"); Erickson Decl. at 3.

Despite signing the drop sheet, Petitioner apparently continued to attend class. However, his uncooperative behavior continued and, "[o]n or around May 27, 2014, Petitioner demanded another drop sheet after being told to put his legal work away." Erickson Decl. at 3.

On May 29, 2014, Petitioner was disruptive in class, and again asked for a drop sheet. Ms. Erickson asked where the previous drop sheet was, and he claimed he put it under his Unit Team's door but had not received it back. Id. After Petitioner's case manager indicated that Petitioner never submitted a drop sheet, Ms. Erickson had the case manager sign the original drop sheet Petitioner signed on May 23, 2014. Ms. Erickson then submitted the form to the literacy coordinator at Ray Brook, who dropped Petitioner from the GED program. Id. Consequently, Petitioner was no longer eligible to earn fifty-four days of GCT, but was only permitted to earn up to

3

forty-two days per year. 28 C.F.R. § 523.20.

## III. ANALYSIS

Petitioner filed the instant Petition arguing that he was denied the right to due process when BOP officials allegedly "forged" certain information on a GED withdrawal form he previously signed. Pet. Aff. at 1, 4. Specifically, he claims Ms. Erickson or another BOP official "forged" his initials on the drop sheet and included the notation "DON'T [sic] WANT SCHOOL" on the form. Id. at 1-2; GED Withdrawal Form. As a result, Petitioner argues he was erroneously withdrawn from the GED class, and his projected release date was "re-routed from 12/8/22 to 3/16/23, causing him an unjustly loss of liberty." Pet. Aff. at 4.[1]

The Due Process Clause of the Fourteenth Amendment protects persons against deprivations of "life, liberty, or property." U.S. CONST. amend. XIV, § 1. Specifically, a prisoner claiming a due process violation must establish "(i) that the restraint about which he complains imposes an 'atypical and significant hardship on [him] in relation to the ordinary incidents of prison life,' and (ii) that the state grants its inmates, by regulation or statute, a protected liberty interest in remaining free from that restraint." Abed v. Armstrong, 209 F.3d 63, 66 (2d Cir. 2000) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)); see also Frazier v. Caughlin, 81 F.3d 313, 317 (2d Cir. 1996); Williams v. Fischer, No. 08-CV-413, 2010 WL 3910129, at *9 (N.D.N.Y. Aug. 17, 2010) adopted, 2010 WL 3893952 (N.D.N.Y. Sep. 30, 2010) ("To establish a protected liberty interest, a prisoner must satisfy the standard set forth in Sandin."). Therefore, in order to establish a violation of due

---

[1] Although Petitioner claims his release date was changed from 12/8/22 to 3/16/23, he later alleges in the Petition that he only lost ten days of good credit time. Pet. at 4-5. As further outlined below, the number of days allegedly "lost" is not relevant because Petitioner did not have a protected liberty interest in the opportunity to earn good credit time.

4

process, a petitioner must first identify a valid liberty interest. See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001) ("In evaluating due process claims, the threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution."); Hirsch v. Suffolk County, No. 08-CV-2660, 2015 WL 1275461, at *9 (E.D.N.Y. Mar. 18, 2015) ("A prerequisite to Plaintiff's recovery against either the County or the State Defendants [for violation of his due process rights] is that Plaintiff must have been deprived of a property or liberty interest protected by the Constitution."); Williams, 2010 WL 3910129, at *9 ("As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property.").

The Second Circuit Court of Appeals has directly addressed the issue presented by Petitioner and has held that inmates have no constitutional right to discretionary good time release. Specifically, the Second Circuit in Abed held that "[a]lthough inmates have a liberty interest in good time credit they have already earned, see Wolff v. McDonnell, 418 U.S. 539, 556-58 . . . no such interest has been recognized in the opportunity to earn good time credit where, as here, prison officials have discretion to determine whether an inmate or class of inmates is eligible to earn good time credit." Abed, 209 F.3d at 66-67; see, e.g., Hirsch, 2015 WL 1275461, at *9 (finding that the petitioner had no liberty interest in good time credits he was precluded from earning after he refused to participate in a Sex Offender Counseling Program); Fowler v. Fischer, No. 13-CV-6262, 2014 WL 4058218, at *2 (S.D.N.Y. Aug. 14, 2014) (finding that petitioner had no liberty interest in GCT where prison officials had discretion to determine whether he was eligible to earn good-time credit).

Here, Petitioner has not articulated a valid liberty interest in good conduct time protected by the Due Process Clause. Petitioner did not lose any good conduct time by withdrawing from the

5

GED class. Instead, Petitioner lost the opportunity to earn the full fifty-four days of GCT, and was only entitled to earn forty-two days of GCT per year after withdrawing from the class. See 28 C.F.R. §§ 523.20, 544.73; Martinez, 2014 WL 8663306, at *4 ("Because a GED program is not mandatory, a prisoner cannot be subject to disciplinary sanctions if he refuses to participate. But it is equally clear that the BOP can withhold GCT if a prisoner refuses to continue to participate in the program once he has entered into it.").

Furthermore, even if the Court assumed that part of the GED withdrawal form was filled in by BOP officials after Petitioner signed it, Petitioner's subsequent loss of opportunity to earn GCT after he was removed from the GED program is not a protected liberty interest. Abed, 209 F.3d at 66-67; see, e.g., Martinez, 2014 WL 8663306, at *7 (finding that even if the correctional institution inadequately implemented a literacy program compelling the petitioner to withdraw from the class, petitioner did not have a protected liberty interest in the subsequent loss of opportunity to earn GCT); Lighthall v. Vadlamudi, No. 04-CV-0721, 2006 WL 721568, at *15 (N.D.N.Y. Mar. 17, 2006) (even assuming the truth of plaintiff's allegation that officials forged documents to deny him merit time, the court found "denial of participation in a program that could lead to a loss of good time credit [was] speculative and fails to allege interference with a protected liberty interest"). Accordingly, Petitioner's due process claim alleging a lost opportunity to earn good conduct time must be dismissed.

### III. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Petition (Dkt. No. 1) is **DENIED and DISMISSED** and judgment is entered in favor of Respondent on all claims; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:　　May 04, 2016
　　　　　　Albany, New York

_[signature]_
Lawrence E. Kahn
U.S. District Judge